UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

AMY McCONNELL and AMY
McCONNELL on behalf of her
four minor children, A.B.,
A.B. J.M. and J.M.,

                                NO. CIV. S-05-0909 FCD DAD

       Plaintiffs,

   v.                       MEMORANDUM AND ORDER

LASSEN COUNTY, CALIFORNIA, et
al.,

       Defendants.

----oo0oo----

    This matter comes before the court on defendant Barbara
Coy's ("Coy") motion for summary judgment pursuant to Rule 56 of
the Federal Rules of Civil Procedure.  For the reasons set forth
below,[1] defendant's motion is GRANTED.

---

    [1] Because oral argument will not be of material assistance,
the court orders this matter submitted on the briefs.  E.D. Cal.
Local Rule 78-230(h).

**BACKGROUND**[2]

This case arises out of the alleged sexual abuse of female minor plaintiffs J.M. and A.B. by Marion ("Hank") Coy, defendant Barbara Coy's husband, while in foster care at the Coy's home in Doyle, California.  At all relevant times, Barbara Coy has been a certified, foster parent in good standing with defendant Environmental Alternatives, a not-for-profit organization that provides foster homes for children in Lassen County.  (RUF ¶ 3; 2d. Am. Compl. ("Compl."), filed Nov. 10, 2005, ¶ 11).  On or about May 1, 2003, the minor plaintiffs J.M., A.B., J.M., and A.B. were placed with Hank and Barbara Coy as foster children.  (RUF ¶ 6).  Between May 1, 2003 and September 29, 2003, Hank and Barbara Coy were the sole guardians and caretakers for the minor children.  (RUF ¶ 7).

On or about September 29, 2003, Sue Durand and Ronald Durand ("Durand"), the biological grandparents of the minor plaintiffs, informed Hank and Barbara Coy that the female plaintiff J.M. had told them that Hank Coy had made her do "bad things."  (RUF ¶

---

[2]      Unless otherwise noted, the facts herein are undisputed.  (See Pls.' Objections to Def.'s Stmt. of Undisp. Facts ("RUF"), filed Apr. 23, 2007).  Where the facts are in dispute, the court recounts plaintiffs' version of the facts.

Plaintiffs "dispute" defendant's facts that are based upon defendant Coy's deposition testimony and declaration on the grounds that such statements lack credibility.  However, plaintiffs cannot sufficiently raise a triable issue of fact simply by raising issues regarding the credibility of defendant's evidence.  See Nat'l Union Fire. Ins. Co. v. Argonaut Ins. Co., 701 F.2d 95, 97 (9th Cir. 1983).  Plaintiffs also assert that many facts are disputed, but their proffered evidence does not contradict defendant's assertion.  Therefore, where plaintiffs fail to point to any contrary evidence or direct contradictions in defendant's own statements, the court will not consider such facts to be in dispute.

47).  Specifically, Durand informed Barbara Coy that J.M. had
stated that Hank Coy made her kiss his peepee or touch it.  (RUF
¶ 48; Dep. of Ronald James Durand ("Durand Dep."), Ex. 6 to Decl.
of Treva J. Hearne ("Hearne Decl."), filed Apr. 23, 2007, at
54:13-21).  Durand testified that he was cautious about accusing
Hank Coy of molestation because J.M. had a reputation for seeking
attention.  (Id. at 144:9-12).  In response, Barbara Coy stated
that J.M. had been saying similar things to her.  (Id. at 54:20-
21).

Immediately thereafter, Barbara Coy talked to the male
plaintiff A.B. and the female plaintiff A.B. alone about the
allegations made by the female plaintiff J.M.  (RUF ¶ 50).  At
that time, both A.B. plaintiffs indicated that Hank Coy had not
molested or inappropriately touched them.  (RUF ¶ 5).  Barbara
Coy then spoke to the female plaintiff J.M. and Hank Coy in the
laundry room of the Coy home.  (RUF ¶ 52).  Hank Coy did not
admit or deny the allegations by the female plaintiff J.M., but
it was apparent from his reaction that he had molested the minor.
(RUF ¶ 53).  Barbara Coy then spoke with Hank Coy alone inside a
vehicle where he admitted to molesting the female plaintiff J.M.
(RUF ¶¶ 54-55).

After Hank Coy admitted to the abuse, he went into the
master bedroom where he stayed the entire night.  (RUF ¶ 56).
During the night of September 29, 2003 and the early morning of
September 30, 2003, Barbara Coy stayed awake in the living room,
which is located between the master bedroom and the rooms where
the minor plaintiffs slept.  (RUF ¶ 57).  Barbara Coy did not
call the authorities the night of September 29, 2003 because

3

Environmental Alternatives was not open and because Hank Coy had
a medical appointment the next morning to refill necessary
medication.  (RUF ¶ 58).  When Hank Coy exited the bedroom the
next morning, Barbara Coy informed him that he could not return
to the house and would likely be arrested.  (RUF ¶ 59).  She
subsequently called Judi Oliviera at Environmental Alternatives
and informed her that she should come to the Coy home with the
Sheriff because Hank Coy had molested the female plaintiff J.M.
(RUF ¶ 60).  Hank Coy was arrested for the sexual abuse of J.M.
and is currently incarcerated on these charges.  (See RUF ¶ 1).

Defendant Barbara Coy asserts that she never knew of any
molestation by her husband until September 29, 2003.  (RUF ¶ 65).
She contends that neither the female plaintiff J.M. or the female
plaintiff A.B. informed her of the molestation until after
September 29, 2003.  (RUF ¶ 64).  Defendant also contends that
during the minor childrens' placement in her home, she was never
told by anyone nor observed that the minor plaintiffs were
experiencing feelings of depression, loneliness, hopelessness,
anxiety, or tension.  (RUF ¶¶ 9-19).  Plaintiffs assert that the
children were required to seek counseling during their time in
foster care, two of the minor children were suspended from
school, one threatened to run away, and one was acting out at
school as well as hitting, kicking, and spitting on Hank Coy.
(RUF ¶¶ 8-9).

On November 10, 2005, plaintiffs filed their Second Amended
Complaint, the operative pleading in this matter, asserting a
claim of negligence against defendant Barbara Coy for her alleged
failure to protect the minor plaintiffs from the sexual abuse

1  inflicted by her husband Hank Coy.  (Compl. ¶¶ 46, 115-20).  On

2  March 12, 2007, defendant Barbara Coy filed this motion for

3  summary judgment, asserting that under the circumstances of this

4  case, she is not liable for negligence under California tort law

5  because she did not owe a duty to the minor plaintiffs.

6  **STANDARD**

7  Summary judgment is appropriate when it is demonstrated that

8  there exists no genuine issue as to any material fact, and that

9  the moving party is entitled to judgment as a matter of law.

10  Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144,

11  157 (1970).

12  Under summary judgment practice, the moving party

13  always bears the initial responsibility of informing
   the district court of the basis of its motion, and

14  identifying those portions of "the pleadings,
   depositions, answers to interrogatories, and admissions

15  on file together with the affidavits, if any," which it
   believes demonstrate the absence of a genuine issue of

16  material fact.

17  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the

18  nonmoving party will bear the burden of proof at trial on a

19  dispositive issue, a summary judgment motion may properly be made

20  in reliance solely on the 'pleadings, depositions, answers to

21  interrogatories, and admissions on file.'"  Id. at 324.  Indeed,

22  summary judgment should be entered against a party who fails to

23  make a showing sufficient to establish the existence of an

24  element essential to that party's case, and on which that party

25  will bear the burden of proof at trial.  Id. at 322.  In such a

26  circumstance, summary judgment should be granted, "so long as

27  whatever is before the district court demonstrates that the

28

1  standard for entry of summary judgment, as set forth in Rule
2  56(c), is satisfied." Id. at 323.

3      If the moving party meets its initial responsibility, the
4  burden then shifts to the opposing party to establish that a
5  genuine issue as to any material fact actually does exist.
6  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,
7  585-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S.
8  253, 288-89 (1968).  In attempting to establish the existence of
9  this factual dispute, the opposing party may not rely upon the
10 denials of its pleadings, but is required to tender evidence of
11 specific facts in the form of affidavits, and/or admissible
12 discovery material, in support of its contention that the dispute
13 exists.  Fed. R. Civ. P. 56(e).  The opposing party must
14 demonstrate that the fact in contention is material, i.e., a fact
15 that might affect the outcome of the suit under the governing
16 law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986),
17 and that the dispute is genuine, i.e., the evidence is such that
18 a reasonable jury could return a verdict for the nonmoving party,
19 id. at 251-52.

20     In the endeavor to establish the existence of a factual
21 dispute, the opposing party need not establish a material issue
22 of fact conclusively in its favor.  It is sufficient that "the
23 claimed factual dispute be shown to require a jury or judge to
24 resolve the parties' differing versions of the truth at trial."
25 First Nat'l Bank, 391 U.S. at 289.  Thus, the "purpose of summary
26 judgment is to 'pierce the pleadings and to assess the proof in
27 order to see whether there is a genuine need for trial.'"

28

1 <u>Matsushita</u>, 475 U.S. at 587 (quoting Rule 56(e) advisory

2 committee's note on 1963 amendments).

3     In resolving the summary judgment motion, the court examines

4 the pleadings, depositions, answers to interrogatories, and

5 admissions on file, together with the affidavits, if any.   Rule

6 56(c); <u>SEC v. Seaboard Corp.</u>, 677 F.2d 1301, 1305-06 (9th Cir.

7 1982).   The evidence of the opposing party is to be believed, and

8 all reasonable inferences that may be drawn from the facts placed

9 before the court must be drawn in favor of the opposing party.

10 <u>Anderson</u>, 477 U.S. at 255.   Nevertheless, inferences are not

11 drawn out of the air, and it is the opposing party's obligation

12 to produce a factual predicate from which the inference may be

13 drawn.  <u>Richards v. Nielsen Freight Lines</u>, 602 F. Supp. 1224,

14 1244-45 (E.D. Cal. 1985), <u>aff'd</u>, 810 F.2d 898 (9th Cir. 1987).

15     Finally, to demonstrate a genuine issue, the opposing party

16 "must do more than simply show that there is some metaphysical

17 doubt as to the material facts. . . . Where the record taken as a

18 whole could not lead a rational trier of fact to find for the

19 nonmoving party, there is no 'genuine issue for trial.'"

20 <u>Matsushita</u>, 475 U.S. at 586-87, 106 S. Ct. at 1356.

21                              **ANALYSIS**

22     Plaintiffs allege that defendant Barbara Coy "negligently

23 failed to protect the minor children from harm perpetrated by the

24 foster father, Hank Coy, who repeatedly sexually molested and

25 physically abused the children while she was present and had a

26 duty to protect the minor children placed in her care."  (Compl.

27 ¶ 46).  More specifically, plaintiffs' complaint alleges that

28 defendant Coy: (1) "knew or had reason to know that her home was

7

not safe for the minor children;" (2) that she "had a duty to protect the minor children in her care;" (3) that she "breached that duty by failing to protect [the] children from the physical and sexual acts of abuse by her husband;" and (4) that the children "have suffered emotional and physical damages" as a result. (Compl. ¶¶ 117, 119-20). By this motion, defendant Barbara Coy argues that she should not be held liable for the conduct of Hank Coy because she was never aware of such deviant conduct by her husband toward any of the foster children in their care.

The issue before the court is not whether plaintiffs were the victims of terrible wrongs at the hands of Hank Coy or whether they suffered physical and emotional injuries as a result of those wrongs. Hank Coy admitted to molesting at least one of the minor female foster children, J.M., and, as a result, is currently incarcerated in Solano State Prison. Rather, the issue before the court in this case is whether defendant Barbara Coy is liable under California tort law for the injuries alleged by plaintiffs because Hank Coy's abusive conduct was reasonably foreseeable.

**A.    Nonfeasance**

The gravamen of plaintiffs' claim for negligence against defendant Coy is that she negligently failed to take action to protect the minor plaintiffs in her care from physical or sexual abuse. Generally, under California law, there is "no duty to act to protect others from the conduct of third parties." <u>Margaret W. v. Kelley R.</u>, 139 Cal. App. 4th 141, 150 (2006) (quoting <u>Delgado v. Trax Bar & Grill</u>, 36 Cal. 4th 224, 235 (2005)). "This

1  rule derives from the common law's distinction between

2  misfeasance and nonfeasance, and its reluctance to impose

3  liability for the latter." Delgado, 36 Cal. 4th at 235 n.12; see

4  also Jacoves v. United Merchandising Corp., 9 Cal. App. 4th 88,

5  114 n.16 ("Misfeasance is the improper performance of an act that

6  is otherwise proper and nonfeasance is the nonperformance of an

7  act that should be performed."). However, a defendant "may owe

8  an affirmative duty to protect another from the conduct of third

9  parties if he or she has a 'special relationship' with the other

10  person." Id. at 235 (citations omitted). In this case,

11  defendant Coy concedes that there was a special relationship

12  between her and the minor plaintiffs by nature of her role as

13  their foster parent.

14       The inquiry into whether a defendant owes a duty to a

15  plaintiff under a theory of nonfeasance does not end with the

16  determination of whether a special relationship exists. Romero

17  v. Superior Court, 89 Cal. App. 4th 1068, 1081 (2001). The

18  secondary inquiry is whether the assailant's conduct was

19  reasonably foreseeable to the defendant. Id.; see Chaney v.

20  Superior Court, 39 Cal. App. 4th 152, 158 (1995).

21       "Duty, being a question of law, is particularly amenable to

22  resolution by summary judgment." Id. (quoting Parsons v. Crown

23  Disposal Co., 15 Cal. 4th 456, 465 (1997)). "While it is the

24  province of the jury, as trier of fact, to determine whether an

25  unreasonable risk of harm was foreseeable under the particular

26  facts of a given case, the trial court must still decide as a

27  matter of law whether there was a duty in the first place, even

28  if that determination includes a consideration of

9

1  foreseeability." Id. (quoting Clarke v. Hoek, 174, Cal. App. 3d
2  208, 214 (1985)).  Whether a duty of care exists in a given
3  circumstance must be determined as a matter of law on a case-by
4  case basis.  Parsons, 15 Cal. 4th at 472.

5      Because of the similarity to the facts in this case, the
6  Chaney decision offers valuable guidance regarding the standard
7  to be applied in determining whether conduct was reasonably
8  foreseeable to a defendant charged with negligent supervision.
9  In Chaney, the plaintiff, a 22-year-old woman, alleged that a
10 family friend sexually assaulted her while she was in his home
11 over an eight-year period, beginning when she was ten-years-old.
12 39 Cal. App. 4th at 155.  The plaintiff also filed a claim
13 against the assailant's wife on the basis that she negligently
14 supervised plaintiff while in the home.  In dismissing the
15 plaintiff's claim for failure to allege facts giving rise to a
16 duty to act, the Chaney court held that public policy requires
17 that a wife have actual knowledge of her husband's deviant
18 propensities in order for the court to impose a duty to take
19 measures to prevent an assault.  Id. at 157.  The court further
20 explained that while a wife's knowledge may be proven by
21 circumstantial evidence,

22     such inference must reflect the wife's *actual knowledge*
       and *not merely constructive knowledge or notice*.
23     Actual knowledge can be inferred from the circumstances
       only if, in the light of the evidence, such inference
24     is not based on speculation or conjecture.  *Only where
       the circumstances are such that the defendant "must
25     have known" and not "should have known" will an
       inference of actual knowledge be permitted.*
26

27 Id. (emphasis added); see also Romero, 89 Cal. App. 4th at 1082.
28 As such the Chaney court adopted a "must have known" test (the

                                  10

1  "Chaney duty rule"), which has subsequently been adopted by other

2  California courts in similar contexts.   See Margaret W. v. Kelley

3  R., 139 Cal. App. 4th at 152-60 (applying the Chaney duty rule

4  where the minor plaintiff alleged that she was sexually assaulted

5  after she left the defendant's home where she had arranged to

6  spend the night with the defendant's minor daughter); Romero, 89

7  Cal. App. 4th at 1086-89 (applying the Chaney duty rule where the

8  minor plaintiff alleged that she was sexually assaulted by

9  another minor while visiting at the defendants' home); Juarez v.

10  Boy Scouts of Am., Inc., 81 Cal. App. 4th 377, 396-97 (2000)

11  (applying the Chaney duty rule where the plaintiff brought a

12  claim of negligent supervision against the defendants based upon

13  the alleged molestations by the plaintiff's scoutmaster).   But

14  see M.W. v. Panama Buena Vista Union Sch. Dist., 110 Cal. App.

15  4th 508, 524-25 (2003) (declining to apply the Chaney duty rule

16  in the context of a school district's supervisory duties due to

17  differing public policy concerns related to providing mandatory

18  education, the existence of statutory duties mandating adequate

19  supervision, the expectations and reliance of parents and

20  students, and the importance to society of the learning

21  activities that take place at school).

22      While the court acknowledges that Chaney and subsequent

23  California cases invoking the Chaney duty rule do not address the

24  circumstance of a special relationship arising out of a foster

25  parent relationship, the court finds that the public policy

26  considerations relevant to imposing a duty to act are similar to

27  those considered in Chaney and its progeny.   In Chaney, as in

28  this case, the plaintiff sought to impose liability upon the

11

1  assailant's wife.  39 Cal. App. 4th at 158.  The <u>Chaney</u> court

2  found that in most cases, a man harboring "deviant sexual

3  preferences and desires" would "wish to – and undoubtedly does –

4  keep them secret, especially from his wife."  <u>Id.</u>  The <u>Chaney</u>

5  court also found that it would be contrary to public policy to

6  require a wife to assume that her husband is likely to molest a

7  child and thus, "armed with the proper fear . . . examine every

8  aspect of her husband's behavior to determine whether he is

9  exhibiting signs indicating that he is contemplating molesting

10 the minor."  <u>Id.</u>  These same policy concerns are raised in the

11 circumstances presented by this case.  <u>Cf.</u> <u>M.W.</u>, 110 Cal. App.

12 4th at 524-25.  As such, the court finds that California courts

13 would likely extend the <u>Chaney</u> duty rule to cases addressing

14 nonfeasance claims against an assailant's wife where the special

15 relationship arises out of a foster care relationship.

16 Therefore, a wife's duty of reasonable care depends on whether

17 she had actual knowledge or "must have known" of her husband's

18 deviant propensities before he sexually assaulted the plaintiff.

19 <u>Chaney</u>, 39 Cal. App. 4th at 157; <u>see</u> <u>Pamela L. v. Farmer</u>, 112

20 Cal. App. 3d 206, 210-12 (1980) (finding that the assailant's

21 wife had actual knowledge of her husband's deviant propensities

22 sufficient to confer a duty to protect because she had knowledge

23 that he had molested women and children in the past).

24     Defendant Barbara Coy presents evidence that she did not

25 have knowledge of her husband's deviant sexual propensities prior

26 to his molestation of J.M.  In her declaration, defendant Coy

27 asserts that prior to September 29, 2003, she had no reason to

28 suspect that her husband of over 40 years was engaging in

1  inappropriate or illegal activities with an minor child. (Decl.

2  of Barbara Coy ("Coy Decl."), filed Mar. 12, 2007, ¶ 45).

3  Specifically, she asserts that she never observed nor was

4  informed by anyone that Hank Coy was entering any of the bedrooms

5  occupied by a minor child, (id. ¶¶ 40-41), that she had no

6  knowledge through observation or information that Hank Coy

7  inappropriately touched any minor child, including the

8  plaintiffs, (id. ¶¶ 42-43), and that the minor plaintiffs

9  displayed no visible or implied indications of depression,

10  loneliness, hopelessness, anxiety, or nervousness, (id. ¶¶ 16-

11  20). Defendant also contends that on or about September 29,

12  2003, after the biological grandparents of the minor plaintiffs

13  informed her that the female plaintiff J.M. indicated that Hank

14  Coy had made her do "bad things," she questioned all the minor

15  children and confronted her husband about the molestation

16  accusations. (Id. ¶¶ 48, 50, 54). Subsequently, Hank Coy

17  admitted to molesting the female plaintiff J.M. (Id. ¶ 56). The

18  next morning, defendant Coy contacted Environmental Alternatives

19  to inform them they should come to the house with the Sheriff

20  because Hank Coy had molested one of the plaintiffs. (Id. ¶ 61).

21      Plaintiffs argue that the court cannot rely on defendant

22  Barbara Coy's declaration or deposition testimony because her

23  statements are "subjective, self-serving, and incredible." (RUF

24  ¶ 2). Therefore, plaintiffs "dispute" various facts solely on

25  the basis that the court should wholly reject Coy's statements.

26  In support of this assertion, plaintiffs submit a document laying

27  out portions of defendant Coy's testimony and alleged

28  contradictions. Plaintiffs cite no authority for their request

that the court disregard the entirety of defendant's statements
on the basis that there is inconsistent evidence relating to
immaterial facts.   On a motion for summary judgment, the relevant
inquiry is whether any of the disputes of fact pointed to by
plaintiffs are material to the critical issue presently before
the court, i.e. whether defendant Coy must have known of Hank
Coy's deviant propensities prior to the molestation.   Many of the
statements made by defendant are not actually contradicted by the
evidence pointed to by plaintiffs.   Further, to the extent that
there are inconsistencies between defendant Coy's statements,
such "contradictions" are not statements that defendant has
subsequently contradicted through her own deposition or
declaration.   Cf. Kennedy v. Allied Mutual Ins. Co., 952 F.2d
262, 266 (9th Cir. 1991) ("The general rule in the Ninth Circuit
is that a party cannot create an issue of fact by an affidavit
contradicting [her] prior deposition testimony.").   Rather, these
"contradictions" are disputes of fact for which defendant has
presented the testimony of Barbara Coy and plaintiffs have
presented other testimony or evidence.[3]   Most importantly, much
of the testimony that plaintiffs seek to discredit does not
relate to issues that are material to this motion.   Therefore,
the court will not wholly reject the statements of defendant Coy
in resolving this motion.

Turning to plaintiff's affirmative arguments regarding
defendant Coy's liability under tort law, plaintiffs first

---

[3]    The court also notes that many of alleged
"contradictions" are not actually contradictory to the statements
or testimony of defendant Coy.

14

contend that defendant was negligent because for approximately one year before the removal of the minor plaintiffs from their home, she had observed that Hank Coy began experiencing some signs of Alzheimer's disease such as lethargy.  (RUF ¶ 30). Plaintiffs also present evidence that Hank Coy did not hear very well.[4]  However, plaintiffs present no evidence that Alzheimer's disease, lethargy, or hearing loss are predictors of child molestation, such that defendant Coy was aware of her husband's deviant propensities as a result of these circumstances.  As such, these assertions have no bearing on defendant's actual knowledge.[5]

Second, plaintiffs contend that defendant Coy must have known about allegations made by her neighbor Ron Cuevas that her husband had attempted to sexually molest Cuevas' fourteen-year-old daughter two years before the minor plaintiffs were placed in defendant's home.  However, plaintiffs present no evidence indicating that Barbara Coy had any knowledge of these accusations.  Cuevas testified that he never spoke to Barbara Coy at any time about any type of sexual allegations made against her husband and that he was not aware that defendant had any

---

[4]    Plaintiffs argue that plaintiff was "deaf."  (RUF ¶ 30).  The evidence cited to does not support this proposition as the deponent, Durand, merely stated that Hank Coy had trouble hearing and that most conversations were with Barbara Coy. (Durand Dep. at 146:23-25).

[5]    To the extent that plaintiffs are attempting to assert a new theory of negligence based upon Hank Coy's Alzheimer's disease, such a claim was not asserted in the plaintiffs' complaint.  For the reasons set forth *infra*, the court will not consider any new claims presented in plaintiffs' opposition. Further, plaintiffs dispute that Hank Coy demonstrated any signs of Alzheimer's or reduced mental deficiency.  (RUF ¶ 30).

1 knowledge of the allegation.  (Dep. of Ron Cuevas, Ex. 15 to

2 Hearne Decl., 89:10-16).  Cuevas also testified that up until the

3 time that Hank Coy was arrested and confessed to molesting J.M.

4 in late September 2003, he never saw nor heard anything that

5 caused him to think that Hank Coy was sexually molesting foster

6 children.  (Id. 25:3-10).  Plaintiffs also fail to present any

7 evidence demonstrating when Cuevas reported or made public his

8 allegations of attempted sexual abuse.  Plaintiffs argue that

9 because defendant lived in Doyle, California, a small town,

10 defendant must have heard about Cuevas' allegations.  This

11 argument, wholly without evidentiary support, is insufficient to

12 raise a triable issue of fact that Barbara Coy had prior actual

13 knowledge of her husband's propensity.  While actual knowledge

14 can be inferred by circumstantial evidence, such inference cannot

15 be based on speculation or conjecture.  Chaney, 39 Cal. App. 4th

16 at 157.  In essence, plaintiffs ask this court to impose

17 liability on the basis that at some point, either before or after

18 the molestation of J.M., small town gossip could have reached

19 defendant's ears.  The court will not do so.

20      Third, plaintiffs assert that defendant Coy must have known

21 about her husband's predilections based upon conversations that

22 she had with Judy Oliviera, an employee of Environmental

23 Alternatives.  Plaintiffs present evidence that in September

24 2003, defendant Coy spoke to Oliviera regarding J.M.'s behavior,

25 such as striking and spitting on Hank Coy.  (Dep. of Barbara Coy

26 ("Coy Dep."), Ex. 4 to Hearne Decl., at 99:8-13, 102:19-25).

27 Oliviera informed defendant that these behaviors sounded like

28 what a child would do if they had been molested.  (Id. at 99:12-

16

17).  Oliviera further informed defendant that she thought that the children had probably been molested *before* they were placed in defendant's care.  (<u>Id.</u> at 100:3-6).  While this evidence may demonstrate that defendant had notice that J.M. was exhibiting signs of molestation, this information did not put defendant on notice of when the molestation occurred or that her husband was the perpetrator.[6]  Therefore, this evidence is also insufficient to demonstrate that defendant had actual knowledge of her husband's deviant propensities.

Finally, plaintiffs assert that when the minor plaintiffs' grandparents informed defendant Coy that J.M. had made statements regarding inappropriate touching, defendant admitted that J.M. had made prior statements about her husband engaging in sexual touching.  Plaintiffs' assertion mischaracterizes the deposition testimony.  Durand testified that when he shared J.M.'s statements with defendant, defendant stated that J.M. had said "similar things" to her.  The allusion to "similar things," alone, is wholly insufficient to show that defendant had actual knowledge of Hank Coy's deviant tendencies *prior* to the molestation.  Plaintiffs present no evidence regarding when these alleged prior "similar" statements were made to defendant Coy or

---

[6]     Plaintiffs also mischaracterize evidence in their opposition, stating that other foster children had been previously removed from the Coy home for bed-wetting, a symptom of sexual abuse.  Barbara Coy testified at her deposition that she asked Environmental Alternatives to remove the children from her home because all of the children wet the bed and one of the children had diarrhea, which she wiped throughout the Coy home.  (Coy Dep. at 34:5-35:19).  There was no indication that sexual abuse was the cause of these behaviors or even suspected.  As such, the prior removal of these children did not put Barbara Coy on notice of her husband's deviant propensities.

what the content of these "similar" statements were.  If such
statements were made after the molestation, defendant would not
have actual knowledge *prior* to the offensive conduct.  Further,
the female plaintiff J.M. testified that the first grownup she
told about the sexual abuse was her grandfather.  (Dep. of J.M.,
Ex. B to Decl. of Valerie A. Arce ("Arce Decl."), filed Mar. 12,
2007, at 13:15-22).  J.M. also testified that *she never told
defendant Coy about what had happened*.  (Id. at 14:18-21).  Under
these circumstances, defendant's alleged vague "admission" to
Durand regarding "similar" statements by J.M. are insufficient to
raise an issue of fact regarding whether defendant had actual
knowledge of her husband's proclivities prior to the molestation.

     In order for the court to impose a duty to act upon
defendant Coy, there must be evidence from which a trier of fact
could reasonably find that defendant had prior actual knowledge
of her husband's propensity to sexually molest minor children.
See Romero, 89 Cal. App. 4th at 1089.  In this case, the record
is devoid of any such evidence.  Plaintiffs presented no
evidence, direct or circumstantial, from which the trier of fact
could reasonably conclude that Barbary Coy must have known of
Hank Coy's propensity to molest a foster child in their care.
See id.  Therefore, defendant Coy's motion for summary judgment
regarding plaintiffs' negligent claim based upon a failure to
protect is GRANTED.

     **B.   Misfeasance**

     Plaintiffs also allege that Barbara Coy made representations
to Environmental Alternatives that her home was a safe placement
for foster children, which resulted in the minor plaintiffs'

placement in the Coy home.  This allegation indicates that plaintiffs are claiming not only that defendant Coy failed to protect them from Hank Coy's abuse, but also that she increased the risk that such harm would occur by her own acts.  As such, plaintiffs have adequately pled a claim for negligence based upon defendant's misfeasance, which "exists when the defendant is responsible for making the plaintiff's position worse, i.e. defendant has created a risk."  Weirum v. RKO Gen., Inc., 15 Cal. 3d 40, 49 (1975).

"Where the act complained of is one of misfeasance, the question of duty is governed by the standards of ordinary care." Romero, 89 Cal. App. 4th at 1091 (quoting Weirum, 15 Cal. 3d at 49).  California courts have applied a "policy-driven, multifactor weighing process for determining whether in a particular case a defendant owed a tort duty to a given plaintiff."  Id. (citing Rowland v. Christian, 69 Cal. 2d 108, 113 (1968)).  These factors are non-exclusive and generally include:

> (1) the foreseeability of harm to the plaintiff; (2) the degree of certainty that the plaintiff suffered harm; (3) the closeness of the connection between the defendant's conduct and the injury suffered; (4) the moral blame attached to defendant's conduct; (5) the policy of preventing future harm; (6) the extent of the burden to the defendant; (7) the consequences to the community of imposing a duty to exercise care with resulting potential liability for breach of that duty; and (8) the availability, cost, and prevalence of insurance for the risk involved.[7]

_____

[7]      Because neither of the parties has addressed the last Rowland factor, the court does not consider it in deciding the duty issue presented in this case.  See Romero, 89 Cal. App. 4th at 1091 n.11.

1    Id. (citing Parsons, 15 Cal. 4th at 472-73).  However, "[t]he

2    most important factor remains foreseeability."  Margaret W., 139

3    Cal. App. 4th at 161.

4         Under the circumstances in this case, the consideration and

5    balance of the Rowland factors militates against finding that

6    defendant Barbara Coy owed a duty of care to plaintiffs under

7    principles of ordinary negligence.  First, as set forth above,

8    plaintiffs have presented no evidence to support a reasonable

9    inference that defendant had notice that her husband of 40 years

10   would sexually molest a child.  As such, the risk of the harm

11   that occurred in this case was not reasonably foreseeable, a

12   critical aspect of imposing a legal duty on defendant that

13   informs many of the following factors.  See Romero, 89 Cal. App.

14   4th at 1092; see also Margaret W., 139 Cal. App. 4th at 161

15   (finding that the remaining Rowland factors could not overcome

16   the lack of foreseeability).

17        None of the parties dispute that at least one of the minor

18   plaintiffs was molested by Hank Coy.  However, where there is no

19   evidence that defendant knew her home would be unsafe due to her

20   husband's deviant propensities, there is only a tenuous

21   connection between defendant Barbara Coy's conduct in

22   representing that her home was safe for foster children and the

23   subsequent abuse of a foster child by her husband.  Further,

24   because the conduct of her husband was not reasonably

25   foreseeable, defendant's representation that her home was safe

26   for foster children is not morally blameworthy.  See id. at 1093.

27   Moreover, the policy of preventing future harm would not be

28   served by imposing liability in this case, where the risk of harm

1   to the children was not reasonably foreseeable by defendant.  <u>See</u>

2   <u>id</u> at 1093-94.  Additionally, the imposition of a duty to protect

3   against an unforeseeable sexual assault by a foster father would

4   require a foster mother to not only "examine every aspect of her

5   husband's behavior to determine whether he is exhibiting signs

6   indicating that he is contemplating molesting the minor," but

7   also to ensure that a foster father is never left alone with any

8   of the children.  <u>See Chaney</u>, 39 Cal. App. 4th at 158.  In the

9   absence of any knowledge of a risk of particular harm associated

10  with a spouse and foster father, this burden is great.  Finally,

11  the imposition of such a duty would also dissuade individuals

12  from entering the foster care system for fear that without hyper-

13  vigilance to potential hidden proclivities of a long-term spouse,

14  one could be civilly liable for attempting to provide a safe home

15  environment for children in need.

16      As such, after consideration of the <u>Rowland</u> factors in the

17  circumstances of this case, the court finds that defendant

18  Barbara Coy did not owe plaintiffs a duty of care under general

19  negligence principles.  Therefore, defendant Coy's motion for

20  summary judgment regarding plaintiffs' negligence claim based

21  upon a theory of misfeasance is GRANTED.

22      **C.   Negligence Per Se**

23      In their opposition, plaintiffs for the first time contend

24  that defendant Barbara Coy is liable for negligence per se for

25  failing to report allegations of abuse pursuant to California

26  Penal Code § 11165.9.  Even under liberal notice pleading

27  standards, plaintiffs did not allege a claim for negligence in

28  their complaint based upon defendant Coy's failure to report.

21

Rather, the crux of plaintiffs' claim is that defendant had knowledge of her husband's propensity for abuse and failed to protect the children from the subsequent physical and sexual abuse perpetrated by her husband.   Nowhere in plaintiffs' complaint is there an allegation regarding defendant's failure to report.

Even if the court construes plaintiffs' assertion of a new theory as a motion to amend their complaint,[8] plaintiffs have not shown "good cause" to amend the pleading under Federal Rule of Civil Procedure 16(b), as is required by the court's Pretrial Scheduling Order.   (Pretrial Scheduling Order, Docket # 59, filed Apr. 18, 2006).   The good cause requirement of Rule 16 primarily considers the diligence of the party seeking the amendment.   <u>See Johnson v. Mammoth Recreations, Inc.</u>, 975 F.2d 604, 607-08 (9th Cir. 1992).   When the proposed modification is an amendment to the pleadings, the moving party may establish good cause by showing "(1) that [he or she] was diligent in assisting the court in creating a workable Rule 16 order; (2) that [his or her] noncompliance with a rule 16 deadline occurred or will occur, notwithstanding [his or her] diligent efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference; and (3) that [he or she] was diligent in seeking amendment of the Rule 16 order, once it became apparent

---

[8]    <u>See Apache Survival Coalition v. United States</u>, 21 F.3d 895, 910 (9th Cir. 1994) (holding that when issues are raised in opposition to a motion for summary judgment which are outside the scope of the complaint, the court should construe the opposition as a motion to amend the pleadings).

that [he or she] could not comply with the order." <u>Jackson v.</u>
<u>Laureate, Inc.</u>, 186 F.R.D. 605, 608 (E.D. Cal. 1999) (citations
omitted).  Whether or not defendant Coy properly reported the
allegations after statements were made by one of the minor
plaintiffs is a fact that has not changed since the filing of the
complaint.  To the extent that facts were obtained in discovery
which led to the assertion of this theory, plaintiffs do not
identify when such facts were obtained, nor do they contend that
amendment of the complaint was requested promptly after the
plaintiffs obtained such knowledge.  Moreover, plaintiffs did not
seek to allege a claim for either negligence per se or negligence
based upon defendant Coys's failure to report in their recently
filed Motion to Amend, which was denied by the court.[9]  (<u>See</u> Am.
Mot. to Amend, Docket # 106, filed Feb. 15, 2007).  Therefore,
plaintiffs have failed to demonstrate "good cause" to add a claim
based upon defendant Coy's alleged failure to report.

Furthermore, even if such "good cause" could be
demonstrated, in order to successfully amend the complaint,
plaintiffs would also have to show that leave to amend is
warranted under Federal Rule of Civil Procedure 15(a) which
states "leave [to amend] is to be freely given when justice so
requires."  Plaintiffs have failed to proffer any argument that
the interests of justice require granting plaintiffs leave to

---

[9]     This omission is particularly glaring in light of the
fact that plaintiffs sought to add allegations that the District
Attorney, as a mandated reporter, failed to report a prior sexual
assault attempt by Hank Coy.  Plaintiff did not seek to add the
District Attorney as a defendant.  (Reply to Opp'n to Am. Mot. to
Amend, Docket # 124, filed Apr. 5, 2007, at 2).

23

amend their complaint at this late stage in the proceedings.[10]
As such, the court does not consider the merits of plaintiffs'
negligence per se claim.[11]

### CONCLUSION

For the foregoing reasons, defendant Barbara Coy's motion
for summary judgment is GRANTED.

IT IS SO ORDERED.

DATED: May 14, 2007



_____
FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE

---

[10]    All discovery has closed, and the deadline for filing
dispositive motions is June 8, 2007.  (Pretrial Scheduling Order,
at 2-3).

[11]    Further, plaintiffs' claim for failure to report is premised
on their assertion that Coy admitted to J.M.'s grandfather that
these allegations of molestation had come up before.  (Pls.'
Opp'n, filed Apr. 23, 2007, at 5).  As set forth above,
defendant's alleged admission about "similar things" was vague
and inconclusive regarding any prior statements by J.M. and any
inference that molestation accusations were referred to by
defendant is inconsistent with J.M.'s deposition testimony that
she never told Barbara Coy about what happened and that the first
adult she told about the molestation was her grandfather.  The
undisputed evidence reveals that the morning after Hank Coy
admitted to the molestation, defendant Barbary Coy called Judy
Oliviera at Environmental Alternatives, reported the incident,
and told her to bring the Sheriff.  (RUF ¶ 60).

[11]    Plaintiffs also argue that "the children were
physically and psychologically abused by Barbara Coy."  (Pls.'
Opp'n, filed Apr. 23, 2007, at 3).  Such an allegation was not
made in plaintiffs' the complaint.  For the reasons set forth in
the court's analysis of plaintiffs' negligence per se claim based
upon a failure to report, the court does not address the merits
of this claim.